UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ANTHONY L. MARTIN,

                                    Plaintiff,

                                                              DECISION AND ORDER

                                                              12-CV-6010L

                v.

NY DIALYSIS SERVICES, INC.,
DBA Strong Health Dialysis Finger Lakes Unit,

                                    Defendant.
_____

          Plaintiff Anthony Martin ("plaintiff") brings this action against his former employer, NY

Dialysis Services, Inc. ("Dialysis Services"), alleging race and gender-based discrimination and

retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et seq. ("Title

VII").  Discovery is now completed, and Dialysis Services moves for summary judgment dismissing

the plaintiff's claims (Dkt. #27).  For the reasons that follow, Dialysis Services' motion for summary

judgment is granted, and the complaint is dismissed.


                         **FACTUAL AND PROCEDURAL BACKGROUND**

          Plaintiff, an African-American male, was hired by Dialysis Services as a patient care

technician on August 3, 2009.  Plaintiff's responsibilities included setting up patients on dialysis

machines, and monitoring their vital signs.

          On January 6, 2010, after five occasions of tardiness, Dialysis Services contends that plaintiff

was issued a verbal warning that he needed to comply with Dialysis Services' written Attendance

and Tardiness Policy.  Plaintiff does not dispute receiving that written policy, under which regular

attendance and punctuality are required, and leaves of absence must be approved by Dialysis

Services.  Employees with up to 7 unexcused absences in a 12-month period are considered to "need improvement," and employees with more than seven absences are considered to be performing "unsatisfactorily."

On April 16, 2010, Dialysis Services affirms that it issued a second written warning to plaintiff concerning continuing attendance problems, including being late to work 14 times, leaving work early five times, and calling in sick on three occasions in the preceding six weeks.

According to Dialysis Services' records, between May 3, 2010 and June 9, 2010, plaintiff was late for work an additional 13 times.  Operations Manager Steve Imel ("Imel"), Director of Operations Mark Sciorilli, and plaintiff's supervisor, Susan Struncius ("Struncius"), met with plaintiff to discuss his continuing attendance problems.  Dialysis Services maintains that during that meeting, plaintiff admitted that he had not timely punched in for his shift.  After the meeting, plaintiff was issued a final written warning.  (Plaintiff admits that there was a meeting and that his attendance was discussed, but denies that he was ever issued any written warning about his attendance problems.)

According to Dialysis Services' records, two days later, on June 11, 2010, plaintiff was a "no call/no show" for his scheduled shift at a different work location, and was written up by the supervisor there.  On June 29, 2010, plaintiff reported several hours late for his scheduled shift.  Later that day, in light of plaintiff's repeated attendance issues, Imel and Struncius made the decision to terminate plaintiff's employment.  Plaintiff was advised of the decision and its basis on July 7, 2010.

Following his termination, plaintiff filed discrimination complaints with several state agencies, including the New York Workers' Compensation Board and the New York Department of Labor, both of which determined that Dialysis Service had not discriminated against the plaintiff with regard to his termination.  Plaintiff also filed an administrative charge of discrimination with New York State Division of Human Rights ("NYSDHR").  The NYSDHR investigated the claim and made a "no probable cause" finding.  The NYSDHR's findings were adopted by the Equal

Employment Opportunity Commission, which issued a dismissal and 90-day right-to-sue letter on October 17, 2011.  This action followed.

## DISCUSSION

### I.  Summary Judgment in Discrimination Cases

Summary judgment will be granted if the record demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  While courts should be cautious about granting summary judgment in cases where motive, intent or state of mind are at issue, a typical facet of discrimination actions, *see Montana v. First Federal Savings and Loan Ass'n of Rochester*, 869 F.2d 100, 103 (2d Cir. 1989), "the salutary purposes of summary judgment – avoiding protracted, expensive and harassing trials – apply no less to discrimination cases than to... other areas of litigation."  *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.1985).  *See also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000), *citing St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 524 (1993).

When considering a motion for summary judgment, the Court must draw inferences from underlying facts "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986), *quoting United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

Where, as here, the party opposing summary judgment is proceeding *pro se*, the Court must "read the pleadings ... liberally and interpret them to raise the strongest arguments that they suggest." *Corcoran v. New York Power Auth.*, 202 F.3d 530, 536 (2d Cir.1999).  Nevertheless, "proceeding *pro se* does not otherwise relieve [opposing party] from the usual requirements of summary judgment." *Fitzpatrick v. N.Y. Cornell Hosp.*, No. 00-Civ.-8594(LAP), 2002 U.S. Dist. LEXIS 25166, at *5 (S.D.N.Y. Jan. 9, 2003).  *See also Stinson v. Sheriff's Dep't of Sullivan County*, 499 F.

Supp. 259, 262 (S.D.N.Y.1980) ( the liberal standard accorded to *pro se* pleadings "is not without

limits, and all normal rules of pleading are not absolutely suspended").

## II.    Plaintiff's Discriminatory Termination Claim

Plaintiff's claim of employment discrimination is subject to the familiar burden-shifting

analysis first articulated in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973).  First, he must

establish a prima facie case of discrimination by demonstrating: (1) membership in a protected class;

(2) satisfactory job performance; and (3) an adverse employment action, occurring under (4)

circumstances giving rise to an inference of discrimination.  *See Collins v. New York City Transit

Auth.*, 305 F.3d 113, 118 (2d Cir. 2002).  Once plaintiff has established a prima facie case, the

burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse

employment action.  *See James v. New York Racing Ass'n*, 233 F.3d 149, 154 (2d Cir. 2000).  The

burden then returns to plaintiff, to supply evidence that the legitimate, nondiscriminatory explanation

offered by defendant for its conduct is a pretext, and that the conduct was actually the result of

discrimination.  *See St. Mary's Honor Center*, 509 U.S. 502, 508 (1993).

While granting plaintiff the liberal interpretation and favorable inferences due to him as a

nonmovant, I find that he has nonetheless failed to establish a prima facie case of discrimination,

and/or to rebut the Dialysis Service's legitimate, nondiscriminatory reason for terminating his

employment.

It is undisputed that plaintiff is an African-American male, and that his termination from

employment constitutes an adverse employment action.

However, plaintiff has not produced evidence sufficient to establish the remaining elements

of his prima facie case, that he was performing his job satisfactorily and/or that his termination took

place under circumstances giving rise to an inference of discrimination on the basis of race or sex.

Significantly, plaintiff has admitted that he was counseled at least once concerning attendance issues,

and he has failed to adduce evidence that would otherwise refute the reasons given by Dialysis Services for terminating his employment.

In support of his discrimination claims, plaintiff testified that: (1) a gay coworker touched him inappropriately and plaintiff complained about it to Dialysis Services; (2) plaintiff and one of his coworkers believed that he performed well at his job when he was there; (3) on one occasion, a Caucasian employee was permitted to fill out an incident report when injured on the job, when plaintiff had not been permitted to obtain an incident report for a prior injury; (4) a coworker used the phrase "play the race card" and stated that African-American patients were seeking drugs; and (5) plaintiff was never warned or disciplined for attendance problems prior to the time of his termination.

With respect to plaintiff's complaint concerning a coworker touching him, plaintiff testified that he complained to Dialysis Services about the coworker, but does not know whether the employee was disciplined. (It is undisputed that the alleged offender's employment was later terminated, although the reasons for that action are unknown.) As such, the incident with the coworker cannot provide support for plaintiff's claim of discrimination. Plaintiff's subjective views of his performance (or the views of his coworkers on that subject) are not relevant to the question of whether plaintiff's attendance was satisfactory, or whether Dialysis Services terminated his employment for other, unlawful reasons. Although racist comments by coworkers can form the basis of a hostile work environment claim, the two isolated stray marks described by plaintiff (use of the term "race card" and a suggestion that African-American patients sought drugs) are insufficiently serious, repeated or continuous for that purpose, nor is there any basis to attribute those comments to Dialysis Services. To the extent that the denial of an incident report for plaintiff could be interpreted as evidencing disparate treatment, plaintiff provides no supporting details to demonstrate that the Caucasian employee and the circumstances of his injury were situated similarly to plaintiff.

Furthermore, although plaintiff now denies that he was ever informed that there was a problem with his attendance prior to his termination, the Court observes that plaintiff previously

- 5 -

stated in his NYSDHR complaint, and repeatedly testified before the NYSDHR and the New York Unemployment Insurance Appeal Board, that he had met and spoken with supervisors concerning his attendance problems prior to his termination. (Dkt. #27

-5 at 8-9, 21-22, 24-25).[1]   Nonetheless, even assuming the truth of plaintiff's current, contrary testimony that his attendance issues were not brought to his attention until his employment was terminated, plaintiff has provided no evidence to refute the substantial evidence, including Dialysis Services' records and multiple disciplinary write-ups, which indicates that he was tardy to work, or absent from work, on numerous occasions.  *See Malacarne v. City Univ. of New York*, 2008 U.S. App. LEXIS 17059 at *6-*7 (2d Cir. 2008) (uncontested, documented evidence of poor job performance overcomes plaintiff's unsupported allegation that her termination was motivated by discriminatory animus) (unpublished opinion).   Thus, even assuming that plaintiff's attendance issues were not preceded by verbal or written warnings, plaintiff has offered no evidence that he was not actually tardy or absent, that other workers who had similar attendance issues were not treated similarly, and/or that his termination occurred for some other, discriminatory reason related to his gender or sex.

## CONCLUSION

For the foregoing reasons, Dialysis Services' motion for summary judgment (Dkt. #27) is granted, and the complaint is dismissed in its entirety, with prejudice.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       September 10, 2013.

---

[1]  In his prior testimony before the state agencies, plaintiff claimed that persons unknown must have tampered with his time card and/or time records in order to make it look as though plaintiff was tardy and/or not showing up to work.  Plaintiff appears to have abandoned that position, and in any event, there is no evidence of record which could support such a conclusion.